UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMINGO OROZCO, *et al.*,

      Plaintiffs,

                                     Case No. 21-cv-12823
v.                                    Hon. Matthew F. Leitman

FCA US, LLC,

      Defendant.

_____/

## ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 72), (2) GRANTING PLAINTIFFS LEAVE TO FILE A MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT, AND (3) DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION TO SEAL (ECF No. 76)

Plaintiffs are owners of Jeep Wrangler and Jeep Gladiator vehicles manufactured by Defendant FCA US, LLC (the "Class Vehicles"). (*See* Am. Compl., ECF No. 17.)  In this action, Plaintiffs claim that FCA sold the Class Vehicles with a "corrosion defect" that causes "paint bubbling, blistering, and other cosmetic issues" that has "dimmish[ed]" the value of their vehicles (the "Corrosion Defect"). (Resp., ECF No. 75, PageID.3517.)  Plaintiffs say that FCA made some attempts to repair the Corrosion Defect but that those attempts have not cured the defect.

The Court previously dismissed all of Plaintiffs' claims except their claims for unjust enrichment. (*See* Order, ECF No. 35; 05/08/2023 Hr'g Tr., ECF No. 84.)

1

The parties then proceeded to discovery.  Now before the Court is FCA's motion for summary judgment on Plaintiffs' remaining unjust enrichment claims. (*See* Mot., ECF No. 72.)  FCA argues, among other things, that Plaintiffs cannot proceed on those claims because an express contract – Plaintiffs' vehicle warranties – "govern[s] the parties' rights and expectations about the vehicles, corrosion, and repairs for corrosion." (*Id.*, PageID.1498.)  Plaintiffs do not dispute the existence of those warranties.  On the contrary, Plaintiffs acknowledge that the warranties are enforceable and that they "explicitly exclude[] surface-level and aesthetic-only corrosion, which is the type caused by the Corrosion Defect." (Resp., ECF No. 75, PageID.3595.)  That concession is fatal to Plaintiffs' unjust enrichment claims. Indeed, under well-settled law, Plaintiffs may not recover for the Corrosion Defect on an unjust enrichment theory where the parties expressly agreed that FCA was not warranting their vehicles against that defect.  Thus, for the reasons explained in more detail below, the Court **GRANTS** FCA's motion for summary judgment on Plaintiffs' unjust enrichment claims.  However, as also explained below, the Court will allow Plaintiffs to file a motion for leave to file a Second Amended Complaint. In that motion, Plaintiffs may seek leave to re-assert fraud and omission-based claims that the Court previously dismissed.  Finally, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' motion to seal. (*See* Mot., ECF No. 76.)

2

**I**

**A**

Plaintiffs Connie Lewis, Domingo and Irma Orozco, Christopher Carano, Mark Bordelon, Antonie Louvat, Justin Navin, and Richard Alvater are purchasers of new Class Vehicles from FCA authorized dealers. (*See* Am. Compl, at ¶¶ 8-13, 15, ECF No. 19, PageID.269-271.)  Plaintiff Raynell McDaniel purchased a used Class Vehicle and Plaintiff Jose Gomez purchased a Certified Pre-Owned Class Vehicle. (*See id.* at ¶¶ 14, 16, PageID.270-271.)

At the time each Class Vehicle was sold, it included an express written warranty (the "Warranty"). (*See, e.g.*, 2018 Jeep Warranty, ECF No. 7-2.)  The Warranty provided that, for the life of the warranty, FCA would "cover[] the cost of all parts and labor needed to repair any item on [the purchaser's] vehicle when it left the manufacturing plant that [was] defective in material, workmanship or factory preparation." (*Id.*, PageID.127.)

Relevant here, the Warranty also included a specific warranty related to vehicle corrosion (the "Corrosion Warranty"). (*See id.*, PageID.130.)  The Corrosion Warranty provided that FCA would "cover[] the cost of all parts and labor needed to repair or replace any sheet metal panels that get holes or rust or other corrosion." (*Id.*)  However, the Corrosion Warranty also had an important exclusion.  It excluded warranty coverage for "[c]osmetic or surface corrosion." (*Id.*)

3

**B**

According to Plaintiffs, each of their vehicles "suffer from a form of corrosion known as filiform corrosion." (Resp., ECF No, 75, PageID.3519; internal quotation marks omitted).  Plaintiffs explain that "[f]iliform corrosion occurs under coatings, such as paint, and often appears as filament or string-like defects in the paint." (*Id.*) They assert that this corrosion "damages" their vehicle "hinges and metal sheets comprising the doors, hood and liftgate," and they claim the "damage only becomes visible after the corrosion causes paint bubbling, blistering, and other cosmetic issues." (*Id.*, PageID.3517.)  Plaintiffs acknowledge that this damage is "surface-level and aesthetic-only" (*id.*, PageID.3535), and, as such, it is "not covered by either the [Warranty] or the Corrosion Warranty." (*Id.*, PageID.3532.)  Indeed, as noted above, Plaintiffs concede that the Corrosion Defect is "explicitly excluded" from warranty coverage. (*Id.*)  Finally, Plaintiffs say that FCA's attempts to repair the Corrosion Defect have not been effective and have further decreased the value of their vehicles. (*See id.*, PageID.3517.)

**C**

The operative pleading in this case is Plaintiffs' First Amended Complaint. (*See* Am. Compl., ECF No. 17.)  In that pleading, Plaintiffs brought claims for unjust enrichment and for violations of consumer protection and consumer fraud laws in various states. (*See id.*)  In 2022, FCA moved to dismiss all of Plaintiffs' claims (*see*

Mot., ECF No. 21), and the Court granted that motion in part and denied it in part (*see* Order, ECF No. 35; 05/08/2023 Hr'g Tr., ECF No. 84).  More specifically, the Court dismissed all of Plaintiffs' claims based on state consumer protection and consumer fraud laws, but it allowed Plaintiffs to proceed to discovery on their unjust enrichment claims. (*See id.*)  The parties then took discovery with respect to those claims.

Following the close of discovery, FCA moved for summary judgment on Plaintiffs' remaining unjust enrichment claims. (*See* Mot., ECF No. 72.)  The Court held a hearing on the motion on January 29, 2026, and it is now prepared to rule on FCA's motion.

## II

FCA moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Under Rule 56, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 312, 326–27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56).  When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.*  But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 252 (1986).  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

**III**

**A**

**1**

FCA's primary argument is that Plaintiffs' unjust enrichment claims fail because an express contract – the Warranty, and its included Corrosion Warranty – governs the subject matter of those claims. (*See* Mot., ECF No. 72, PageID.1513-1522.)  The Court agrees.

As this Court has previously explained when rejecting similar unjust enrichment claims brought by groups of vehicle owners against the manufacturers of their vehicles, the general rule is that a vehicle purchaser cannot maintain an unjust enrichment claim where there is an express warranty that governs the same subject matter as the purchaser's unjust enrichment claims:

> Plaintiffs' unjust enrichment claim is not cognizable because there is an express contract that covers the same subject matter – namely, the express limited warranty that GM provided at the time the Class Vehicles were first purchased.  "Courts will not imply a contract" for the purposes of an unjust enrichment claim "where there is an express contract governing the same subject matter." *GM Air Conditioning*, 406 F.Supp.3d at 634 (emphasis removed) (dismissing unjust enrichment claim). *See also FLF, Inc. v. World Publ'ns, Inc.*, 999 F.Supp. 640, 642 (D. Md. 1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought

6

> where the subject matter of the claim is covered by an express contract between the parties"); *Paracor Fin., Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("Under [] California ... law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."). Indeed, courts have regularly dismissed unjust enrichment claims filed against automobile manufacturers where a valid, enforceable express warranty covers the same subject matter as plaintiffs' unjust enrichment claims. *See*, *e.g.*, *McKee*, 376 F.Supp.3d at 762 ("Because the [w]arranty governs [p]laintiff's claims against GM for the Transmission Defect, a claim for unjust enrichment is unavailable to him."); *Mitchell v. Gen. Motors, LLC*, 2014 WL 1319519, at *15 (W.D. Ky. Mar. 31, 2014) (granting GM's motion to dismiss unjust enrichment claim where "the written [w]arranty is an explicit contract that governs their relationship"); *Miller v. Gen. Motors, LLC*, 2018 WL 2740240, at *15 (E.D. Mich. June 7, 2018) (holding that plaintiffs' "unjust enrichment claims … fail because the terms of the GM Limited Warranty governs the parties' rights and obligations with respect to defects in materials and workmanship, and thus no contract will be implied in law to defeat the GM Limited Warranties' express terms"). Thus, because the express limited warranty governs the same subject matter as Plaintiffs' unjust enrichment claim, that claim fails. *See GM Air Conditioning*, 406 F.Supp.3d at 635.

*Cunningham v. Ford Motor Co.*, 641 F.Supp.3d 400, 413–14 (E.D. Mich. 2022) (quoting *Hall v. Gen. Motors, LLC*, No. 19-cv-10186, 2020 WL 1285636, at *10 (E.D. Mich. Mar. 18, 2020)). *See also In re General Motors Air Conditioning Mktg. and Sales Pracs. Litig.*, 406 F.Supp.3d 618, 634 (E.D. Mich. 2019) ("Plaintiffs cannot maintain their unjust enrichment claim here because there is an express

contract governing the same subject matter as that claim – the express Limited Warranty.").

Another Judge on this Court reached the same conclusion in a similar automotive defect case.  In *Gregario v. Ford Motor Co.*, 522 F.Supp.3d 264 (E.D. Mich. 2021) (Michelson, J.), a group of vehicle owners alleged that "Ford Motor Company sold them vehicles with inherent defects in the[ir] manual transmissions." *Id.* at 271.  They brought "claims for fraudulent omission and breach of express and implied warranty under the laws of nine states, plus class-wide claims under the Magnuson-Moss Warranty Act and for unjust enrichment." *Id.*  As here, each vehicle came with a "New Vehicle Limited Warranty" under which Ford promised to "'repair, replace, or adjust' at no cost covered powertrain parts (including the transmission) 'that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship.'" *Id.* at 287.  Ford moved to dismiss plaintiffs' unjust enrichment claims based on the existence of that warranty, and Judge Michelson granted that motion.  She held that "[b]ecause the [New Vehicle Limited Warranty] govern[ed]" the parties' relationship, "[p]laintiffs [could not] maintain [their] unjust enrichment claims." *Id.* at 294.  She further explained that:

Here, the parties do not dispute that the [New Vehicle Limited Warranty] is an express contract that governs the same subject matter as Plaintiffs' unjust enrichment claim – namely Ford's duties to repair or replace a defect in Plaintiffs' vehicles. The dispute is instead over what types of defects Ford is required to repair or replace under the warranty.

As is the case here, "[w]here the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel and unjust enrichment." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 181 (6th Cir. 1996). And "[c]ourts have regularly dismissed unjust enrichment claims filed against automobile manufacturers where a valid, enforceable express warranty covers the same subject matter as plaintiffs' unjust enrichment claims." *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 634 (E.D. Mich. 2019); *see also McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 762 (E.D. Mich. 2019); *Hall v. Gen. Motors, LLC*, No. 19-CV-10186, 2020 WL 1285636, at *9 (E.D. Mich. Mar. 18, 2020), *appeal dismissed,* No. 20-1321, 2020 WL 6140402 (6th Cir. Sept. 28, 2020); *Gant v. Ford Motor Co.*, No. 19-CV-12533, —— F.Supp.3d ——, ——, 2021 WL 364250, at *11 (E.D. Mich. 2021). [….]

Because the [New Vehicle Limited Warranty] governs the parties' relationship and Ford's duties to remedy defects, Plaintiffs' unjust enrichment claims are dismissed.

*Id.*

With the possible exception of Plaintiff McDaniel,[1] the general rules quoted above by this Court and by Judge Michelson apply to the Plaintiffs here.  In each of

---

[1] Plaintiff McDaniel purchased his vehicle in Illinois.  Unlike the other states at issue, Illinois divides unjust enrichment claims into two categories: tort and quasi-contract.

the states where Plaintiffs purchased their vehicles, a vehicle purchaser cannot maintain an unjust enrichment claim against a vehicle manufacturer based upon a claimed defect where, as here, an express warranty addresses which defects, if any, are covered by the manufacturer. *See, e.g.*, *id.* (applying Michigan law in automotive defect case and dismissing unjust enrichment claim); *Chiarelli v. Nissan North Am., Inc.*, No. 14-CV-4327, 2015 WL 5686507, at * 18 (E.D.N.Y. Sept. 25, 2015) (dismissing unjust enrichment claims brought under the laws of Maryland, Florida, and New York by vehicle purchasers alleging that their vehicles had a "defective timing chain system" because an "express contract" – the vehicle's express warranty – covered the "subject matter" of the parties' dispute); *Crawford v. FCA US LLC*, No. 2:20-cv-12341, 2024 WL 919830, at * 9 (E.D. Mich. Mar. 4, 2024) (dismissing unjust enrichment claim brought by Minnesota vehicle purchaser alleging that his engine was defective because under Minnesota law, "an express contract precludes recovery under a theory of unjust enrichment"). *See also Drs. Bethea, Moustokas & Weaver v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 408 (5th Cir. 2004) ("Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a

---

It is possible that McDaniel's unjust enrichment claim falls into the tort category, and it is not yet clear to the Court whether (or how) the general rule described above applies under Illinois law to unjust enrichment claims in that category. However, the Court need not address that issue because, for the reasons explained in Section (III)(B) below, McDaniel's unjust enrichment claim fails for a different reason: he purchased his car used and he has not produced any evidence that FCA received any benefit from that used car purchase.

relationship that is controlled by an enforceable contract"); *Neogen Corp. v. Innovative Reprod. Tech., LLC*, No. 4:19-cv-00330, 2022 WL 14656787, at * 7 (S.D. Iowa June 14, 2022) (granting summary judgment on unjust enrichment claim and holding that, under Iowa law, where an "express contract governs the parties' relationship, [a party] cannot recover under an implied contract theory").

**2**

Plaintiffs counter that they should be allowed to proceed on their unjust enrichment claims because the Warranty and Corrosion Warranty actually "do <u>not</u> govern coverage of the Corrosion Defect." (Resp., ECF No. 75, PageID.3537; emphasis in original.) They explain that the Warranty and Corrosion Warranty do not "govern coverage" because those warranties do not entitle them to a repair of the Corrosion Defect. (*Id.*) And they insist that because "there is no valid warranty or contract regarding the filiform corrosion Plaintiffs are experiencing with their FCA-made" vehicles, neither the Warranty nor the Corrosion Warranty bar their unjust enrichment claims. (*Id.*, PageID.3534.) The Court disagrees.

As an initial matter, it seems difficult, if not impossible, to square Plaintiffs' argument with their concession, noted above, that the Corrosion Warranty "explicitly excludes" coverage for the Corrosion Defect. A warranty that expressly *excludes* coverage for a certain defect seems plainly to "govern" whether the defect

11

is covered and whether the manufacturer may be held liable for the defect under a contractual and quasi-contractual theory.

Another problem with Plaintiffs' argument is that they treat the governing rule (described above) as if it allows them to pursue their unjust enrichment claims because they do not have a right to relief under the Corrosion Warranty. But the governing rule does not focus on whether the parties' contract provides relief to a plaintiff. Instead, the rule focuses on whether that contract addresses the subject matter of the plaintiff's claim. *See, e.g., Gregario*, 522 F.Supp.3d at 294. A key rationale for the rule seems to be that where the parties have considered a risk and assigned liability/responsibility for that risk to one side in their contract, it would be unfair to permit that party to recover on an unjust enrichment theory when the risk comes to fruition.

Accordingly, in this case, the key question is not, as Plaintiffs suggest, whether they have a right to relief for the Corrosion Defect under the Corrosion Warranty. Instead, the more relevant question under the governing rule is whether the parties considered the risk of the Corrosion Defect and whether, in the Corrosion Warranty, they allocated that risk to the Plaintiffs. The parties plainly did so. Again, as noted above, Plaintiffs concede that the Corrosion Warranty "explicitly excludes" coverage for the Corrosion Defect. (Resp., ECF No. 75, PageID.3537.) That is another way of saying that the parties considered that such defect could arise and

allocated that risk *to the Plaintiffs*.  Having assumed that risk, Plaintiffs may not recover for it on their claims of unjust enrichment.  Indeed, it would be quite odd to hold FCA liable for the Corrosion Defect on the basis of unjust enrichment when FCA expressly declined to provide warranty coverage for that defect.

Finally, Plaintiffs have not identified any persuasive authority to the contrary. They have not, for example, cited any automotive defect cases where any court has allowed an unjust enrichment claim to proceed where, as here, a written warranty expressly excludes warranty coverage for the very defect that forms the basis of the plaintiff's unjust enrichment claim.

When asked at the hearing to identify their best case that supports the viability of their unjust enrichment claims, Plaintiffs identified *United States for Use & Benefit of Insite Contractors, Inc. v. Env't Mgmt. Res.*, *Inc*., No. 3:20-cv-5547, 2022 WL 20509305, at *6 (N.D. Fla. Sept. 29, 2022).  But *Insite Contractors,* which is not an automotive defect case, is materially distinguishable.  In *Insite Contractors*, a general contractor hired a concrete subcontractor to perform certain concrete work on a construction project.  At the conclusion of the project, the subcontractor brought suit to recover "a balance due under the [parties'] written subcontract, as well as amounts for additional work and materials furnished on the project at [the contractor's] direction." *Id.* at *1.  The subcontractor asserted claims for breach of the subcontract and for unjust enrichment. *See id.* at *2.  The general contractor

13

moved to dismiss the unjust enrichment claim on the basis that the parties' express

subcontract contract controlled, and the court denied that motion. *See id.* at *6. The

court explained:

> [The contractor] argues that [the subcontractor's] unjust enrichment claims fail as a matter of law because the parties entered into an express contract, the subcontract, which governs the parties' dispute. [The subcontractor] responds that if it does not prevail on its claim of an express contract for the additional work, the unjust enrichment claims are alleged in the alternative.
>
> Although generally no equitable claim for unjust enrichment lies where there is an express contract governing the parties' relationship, Florida law allows a plaintiff to simultaneously plead unjust enrichment and a contract claim, "so that a plaintiff who fails to prove the existence of an express contract may still recover for an implied contract." *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1287 (S.D. Fla. 2021) (internal quotations omitted, citing *Hazen v. Cobb*, 96 Fla. 151, 117 (Fla. 1928)). In other words, it is proper to allege an unjust enrichment claim in the alternative where the existence of a contract is disputed. *Frayman*, 515 F. Supp. 3d at 1287.
>
> Should a jury find that the additional concrete work and curb installation were not within [the subcontractor's] scope of work under the written subcontract and that the parties did not orally agree to modify the subcontract to include such work, a reasonable jury could alternatively conclude, based on the record evidence, that [the general contractor] was unjustly enriched when it refused to compensate Insite for the additional work performed. *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1565-66 (S.D. Fla. 1997) ("Under Florida law, a party may simultaneously allege the existence of an oral contract and seek equitable relief under the theory of unjust

14

enrichment."). Accordingly, [the subcontractor's] unjust enrichment claims do not fail as a matter of law.

*Id.*

This action, in sharp contrast to *Insite Contractors*, has proceeded far beyond the pleading stage, and there is thus no basis for the Plaintiffs to pursue their unjust enrichment claims "in the alternative," as the court in *Insite Contractors* allowed the subcontractor to do. *Id.* More importantly, unlike in *Insite Contractors*, it is clear here that the Corrosion Defect fell squarely *within* the scope of the matters addressed by the Corrosion Warranty. Indeed, Plaintiffs effectively acknowledge that the Corrosion Warranty addressed the Corrosion Defect when they concede that the warranty expressly excluded coverage for that defect. *Insite Contractors* simply did not address the circumstances presented here. *Insite Contractors* therefore does not persuade the Court that Plaintiffs may proceed with their unjust enrichment claims.[2]

---

[2] In response to FCA's summary judgment motion, Plaintiffs also argued that FCA's summary judgment arguments were premature because expert discovery had not yet been completed. (*See* Resp., ECF No. 75, PageID.3542.) Plaintiffs suggested that expert discovery could confirm that, as Plaintiffs contend, the Corrosion Defect is a design defect. (*Id.*) But Plaintiffs' unjust enrichment claim would still fail even if the Corrosion Defect was determined to be a design defect. That is because, as Plaintiffs acknowledged at the hearing before the Court, the Warranty excludes coverage for design defects. Because the Warranty excludes coverage for such defects, for all of the reasons explained above, Plaintiffs could not proceed with an unjust enrichment claim if the Corrosion Defect was found to be a design defect. Thus, there is no reason to delay the entry of summary judgment on the unjust enrichment claims until the completion of expert discovery.

For all of these reasons, FCA is entitled to summary judgment on all of Plaintiffs' unjust enrichment claims – with the exception of the claim brought by Plaintiff McDaniel – because the Warranty and Corrosion Warranty cover the same subject matter as those claims.[3]

**B**

The Court next turns to the unjust enrichment claim brought by Plaintiff McDaniel.  As noted above (*see* fn. 1, *supra*), it is not clear that the general rule that the Court applied above is fatal to McDaniel's claim under Illinois law.  But the claim fails for a different reason: McDaniel has not identified sufficient evidence that he ever conferred a benefit on FCA.

Under Illinois law, to proceed on an unjust enrichment claim, a plaintiff must show that "the defendant unjustly retained a benefit to the plaintiff's detriment." *Barry v. St. Mary's Hosp. Decatur*, 68 N.E.3d 964, 976 (Ill. App. 2016).  "Many unjust-enrichment cases involve 'situations in which the benefit the plaintiff is seeking to recover proceeded directly from him to the defendant.'" *Id.* (quoting *HPI Health Care Svcs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).  But a plaintiff need not show that he conferred that benefit directly on the defendant.

---

[3] In FCA's summary judgment motion, FCA raised several alternative bases that it said required dismissing Plaintiffs' unjust enrichment claims. (*See* Mot., ECF No. 72, PageID.1522-1531.)  The Court need not, and does not, reach any conclusion with respect to any of those alternative bases here.

16

He may proceed on his unjust enrichment claim if he shows, among other things, that a relevant benefit was "transferred to the defendant by a third party." *Id.* (quoting *HPI Health Care Svcs.*, 545 N.E.2d at 679). McDaniel has not made that showing here.

Unlike the majority of other Plaintiffs in this case, McDaniel did not purchase a new vehicle from FCA. Instead, he purchased his vehicle used from a third-party dealer in Illinois. And he has not identified any evidence that that third-party dealer transferred any benefit to FCA. Nor has he identified any evidence that FCA benefited in any other way from his used car purchase. Under similar circumstances, this Court has previously dismissed unjust enrichment claims brought against vehicle manufacturers by vehicle owners where the owners purchased their cars from a third-party dealer:

> Plaintiffs' unjust enrichment claim also fails because they have not sufficiently pleaded that they conferred a benefit on GM. Here, all of the Plaintiffs purchased their cars on the used-car market, and some even purchased their vehicles from third parties who have no apparent connection to GM. Plaintiffs have neither sufficiently alleged nor explained how their purchases of used vehicles benefited GM. In similar circumstances, courts have dismissed unjust enrichment claims. *See, e.g., In re Ford Motor Co., E-350 Van Prods. Liab. Litig.*, 2011 WL 601279, at *6 (D. N.J. Feb. 16, 2011) (dismissing unjust enrichment claim where plaintiff "purchased a used E-350 van from a Ford dealership" because plaintiff had not "explained" how his "purchase of a use vehicle conferred a benefit upon Ford"); *Gerstle v. Am. Honda Motor Co.*, 2017 WL 1477141, at *15 (N.D. Cal. Apr. 25, 2017) ("The

17

Court agrees with Defendant that the purchase of a used car, whether private or certified at a dealership, does not benefit [the manufacturer] because such a purchase has no impact on product allocation. The Court also agrees that the third-party seller, not the manufacturer, receives a benefit when a used car is purchased in an arm's length transaction.") (internal citation omitted), *superseded on other grounds*, *Gerstle v. Am. Honda Motor Co.*, 2017 WL 2797810 (N.D. Cal. June 28, 2017). Plaintiffs' failure to plausibly allege that their used-car purchases benefitted GM further supports dismissal of their unjust enrichment claim.

*Hall*, 2020 WL 1285636, at *10.

In his response to FCA's summary judgment motion, McDaniel acknowledges that under Illinois law, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant *has unjustly retained a benefit* to the plaintiff's detriment." (Resp., ECF No. 75, PageID.3548-3549 (quoting *Flores v. Aon Corp.* 242 N.E.3d 340, 356 (Ill. App. 2023)) (emphasis added).)  But he has not identified any *evidence* that FCA received or retained any benefit from his used car purchase here.  Thus, for that reason, his unjust enrichment claim must be dismissed.

## C

The Court's conclusion that Plaintiffs may not maintain their unjust enrichment claims against FCA here should not be understood to suggest that automobile purchasers are left without any remedies if they purchase an allegedly defective vehicle from a vehicle manufacturer.  Indeed, there are several other

18

potential claims that such a vehicle owner may be able to bring under those circumstances: breach of express or implied warranties; a claim under state "lemon law" statutes; and, upon a showing of pre-sale knowledge of a defect, claims for fraud and/or violations of state consumer protection statutes.

In fact, that is what Plaintiffs attempted to do in this case. In addition to their claims for unjust enrichment, Plaintiffs initially brought claims that FCA violated various state consumer protection statutes when it sold the Class Vehicles despite knowing that the vehicles suffered from the Corrosion Defect. The Court previously dismissed those claims at the pleading stage because, at that time, the Court concluded that Plaintiffs had not sufficiently alleged FCA's pre-sale knowledge of the Corrosion Defect. (*See* 05/08/2023 Hr'g Tr., ECF No. 84, PageID.5217-5222.)

Plaintiffs now assert that they have found evidence of pre-sale knowledge that breathes new life into their consumer protection claims. Plaintiffs say that during discovery, they uncovered evidence that FCA "knew Class Vehicles suffered from filiform corrosion around the hinges, specifically those on the hood, doors, and liftgates of the vehicles" and that FCA knew that its attempts to repair that corrosion were not effective. (Resp., ECF No. 75, PageID.3520-3526.) Plaintiffs say that they did not seek leave to amend to reassert their dismissed consumer-protection claims because they believed, based on comments that the Court made when it announced

19

its ruling dismissing those claims, that the Court would not allow any additional amendments of the pleadings in this case.

The Court has carefully reviewed the procedural history of this case, and it concludes that Plaintiffs' belief that they were foreclosed from seeking leave to amend was not unreasonable.  Here is what happened.  On February 11, 2022, FCA moved to dismiss Plaintiffs' Complaint.  As the Court routinely does when a party files such a motion to dismiss, it issued an order giving Plaintiffs the opportunity, before the parties fully briefed the motion to dismiss, to file an Amended Complaint. (*See* Order, ECF No. 10.)  In that order, the Court explained that it did "not anticipate allowing Plaintiffs another opportunity to amend to add factual allegations *they could now include in their First Amended Complaint*.  Simply put, this is Plaintiffs' opportunity to allege any and all additional facts, *currently known to them*, that may cure the alleged deficiencies in their claims." (*Id.*, PageID.250 (emphasis added).) Thus, the Court's order only precluded Plaintiffs from filing additional motions to amend that would include "additional facts" that they "could [have] include[d] in their First Amended Complaint."  The Court's order did not prohibit Plaintiffs from seeking leave to amend if they discovered new facts that they did not know and could not have included in their First Amended Complaint.

But the Court's order was not the Court's last word on the issue of possible amendments.  After Plaintiffs filed their First Amended Complaint, FCA filed a new

20

motion to dismiss that pleading.  The Court held a hearing on that motion.  During

that hearing, after the Court explained its reasoning for dismissing Plaintiffs'

consumer protection act claims, it returned to the topic of amending the pleadings:

> And the last point here is that I just want to close the loop for the record. I'm not going to allow another round of amendments here, in this case, to the complaint. I used a procedure in this case that I have used before, in the *Wysong* case that I had, and that is allowing the motion to amend – or, excuse me, allowing the amendment as of right in response to the initially filed motion to amend, that highlights the particular issues. And I do that to try to give the plaintiff a fair and best opportunity to address these deficiencies, and once plaintiff take their best shot, we all spend a lot of time and energy dealing with the defendant's motion to attack the best shot.
>
> So here, the defendant filed not one, but two substantial motions to dismiss. Plaintiffs responded. I then spent a lot of time preparing for this hearing, getting ready, reading the cases, studying the different states' states laws that ultimately I didn't have to reach, given my decision here. And then both sides travelled in here and spent time and resources.
>
> And it was under these circumstances that I declined to permit an additional amendment in the *Wysong* case, that went up to the Sixth Circuit and was affirmed in a published decision. I have adhered to that, as I think that is an appropriate approach here. So for those reasons, we will proceed on the unjust enrichment claims, and that will be it with respect to additional amendments at this point.

(05/08/2023 Hr'g Tr., ECF No. 84, PageID.5222-5223.)

The Court's comments about amendments at the hearing on the motion to

dismiss were not as clear as the Court may have hoped.  While the Court simply

21

meant to reiterate what it said in its previous order – that Plaintiffs would not be allowed to amend to add new facts that they *then* knew but chose not to include in their First Amended Complaint – Plaintiffs' interpretation that the door had been closed on *all* future amendments was not unreasonable. Plaintiffs' decision to withhold a motion for leave to amend to re-assert the previously-dismissed consumer protection claims was therefore reasonable. Under these circumstances, the Court concludes that fairness requires providing the Plaintiffs an opportunity to file such a motion seeking leave to amend.

Accordingly, the Court will **GRANT** Plaintiffs leave to file a motion for leave to file a Second Amended Complaint. In that motion, Plaintiffs shall explain what new facts they learned during discovery, how those facts show FCA's pre-sale knowledge of the Corrosion Defect (and how those facts satisfy the other elements of any consumer protection claims Plaintiffs may seek to bring), and how their proposed amendments cure the deficiencies in their claims previously identified by FCA and by the Court at the hearing on FCA's motion to dismiss. Plaintiffs shall also identify case law that supports allowing a plaintiff to revive a previously dismissed claim when new evidence that could support that claim is uncovered during discovery. Plaintiffs shall further explain how their proposed amended Complaint would affect the posture of this action (*i.e.*, whether any additional discovery would be needed on their consumer protection claims if the Court allowed

them to move forward), and they shall address the potential prejudice to FCA to allowing an amendment at this late stage of the litigation. Plaintiffs may also include any other arguments that support allowing them to file their Second Amended Complaint. Finally, Plaintiffs shall attach to their motion their proposed Second Amended Complaint. FCA shall thereafter respond to the motion for leave to amend and shall address the issues set forth above and any other issues it deems appropriate.

**IV**

The Court concludes by turning to Plaintiffs' motion to seal. (*See* Mot., ECF No. 76.) In that motion, Plaintiffs seek to seal several exhibits that they used in support of their response to FCA's summary judgment motion. Plaintiffs say that those exhibits contain FCA's confidential and proprietary business information. (*See id.*) The Court is not yet persuaded that, pursuant to the Sixth Circuit's decision in *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016), a sufficient record exists that supports Plaintiffs' sealing request. The Court therefore **DENIES** Plaintiffs' motion to seal **WITHOUT PREJUDICE**. But the Court will not unseal the exhibits at this time. Instead, the Court will convene a status conference with the parties to discuss the filing of a renewed motion to seal.

**V**

For all of the reasons explained above, FCA's motion for summary judgment (ECF No. 72) is **GRANTED**, Plaintiffs' motion to seal (ECF No. 76) is **DENIED WITHOUT PREJUDICE**, and Plaintiffs are **GRANTED LEAVE** to file a motion for leave to file a Second Amended Complaint.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  February 17, 2026

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 17, 2026, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126

24
